IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TIMOTHY MASTERS,

                    Petitioner,                         OPINION AND ORDER

        v.                                              25-cv-80-wmc

WARDEN E. EMMERICH,

                    Respondent.

---

Petitioner Timothy Masters is presently incarcerated by the U.S. Bureau of Prisons (BOP) at the Federal Correctional Institution in Oxford, Wisconsin ("FCI-Oxford"). Representing himself, Masters has filed a federal habeas corpus petition under 28 U.S.C. § 2241, seeking to challenge a prison disciplinary proceeding that resulted in the loss of good-time credit. Respondent argues that the petition should be dismissed on two independent grounds: (1) Masters failed to exhaust available administrative remedies; and (2) he received sufficient due process during his disciplinary hearing. (Dkt. #10.) After considering all of the pleadings, the exhibits, and the applicable law, this action will be dismissed on the first ground, meaning that the case must be dismissed without prejudice for failure to exhaust.

BACKGROUND[1]

Timothy Masters  is currently serving a 324-month sentence of imprisonment at

---

[1] Unless otherwise indicated, the facts in this section are drawn from the petition, the brief in support, and the exhibits submitted by the parties. (Dkts. ##1-2, 11-12.) Because petitioner represents himself, his *pro se* submissions are held to less stringent standards than formal pleadings drafted by a lawyer. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

FCI-Oxford.  Nevertheless, he has a projected release date of May 28, 2038, with credit for good conduct time.

On April 3, 2024, correctional officers at FCI-Oxford searched of Masters' cell, which he shared with fellow inmate Carl Hart. During the search, an 8-inch sharpened piece of metal with string wrapped around it as a handle was discovered, prompting Officer B. Peters to issue an incident report (No. 3918263).  On April 4, 2024, inmates Masters and Hart were both formally charged with violating Code 104 by "Possessing a Dangerous Weapon."  In the report, Peters described the weapon at issue as an 8-inch piece of metal sharpened to a point with string tied at one end as a handle, which was found under the bottom locker in the cell.

After the incident report was delivered to Masters, he was given a "Notice of Discipline Hearing" before a Disciplinary Hearing Officer ("DHO"), along with a copy of an "Inmates Rights at Discipline Hearing" form describing his rights during the hearing. According to his notice form, which is signed by Masters, he elected neither to have a staff member represent him nor to present documentary evidence or witnesses at his hearing.

On April 8, 2024, the disciplinary hearing was conducted by DHO M. Banuelos over the phone.  During the hearing, Masters was given the opportunity to make a statement, during which he blamed members of a Hispanic prison gang, "the Paisas," who he asserted "must have planted [the weapon found in his cell]".  At the conclusion of the hearing, the DHO found Masters responsible for Possessing a Dangerous Weapon and imposed sanctions, including:  a 41-day disallowance of good conduct time; 30 days in

2

disciplinary segregation; and loss of email, visitation and commissary privileges for 120 days.

Following the DHO's findings, Masters appealed the decision by submitting a "BP-10" form to the North Central Regional Office ("NCRO"), which was received on April 29, 2024. In this form, Masters stated:

> On 4-3-24 my cell mate Carl [Hart] . . . and myself were [shown a] weapon [] found in a common area of our cell. Both of us [then received] a 104 incident report. Neither Mr. Hart [n]or myself had any knowledge of the weapon, and both of us denied the charges. On 4-9-24 Mr. Hart and myself went befor[e] DHO . . . I went first and was found guilty. Mr. Hart went after me an[d] came out just over a minute later. He was told his paperwork was [incomplete] an[d] would have to see [the Unit Disciplinary Committee ("UDC")] again. Later that night, Carl Hart was informed his 104 incident report was expunged. How can I be found guilty an[d] not Mr. Hart when neither of us took responsibility [?]

The NCRO denied Masters' appeal, and informed him of his right to appeal further to the Office of General Counsel.

Masters next filed a "BP-11" appeal form with the Office of General Counsel, which was received on July 15, 2024. In his appeal, Masters claimed that he had told the UDC, the DHO, and the Special Investigative Supervisor ("SIS") to review the "A-Range footage of the Juneau Unit," because it would show someone with a "malicious intent" planting the weapon in his cell. More specifically, Masters stated that the individual with the "malicious intent" was likely a member of the Paisas, who he again blamed for planting the weapon. Masters also asserted that the UDC and DHO intentionally denied his requests to review the A-Range footage in violation of his due process rights.

Masters' appeal to the Office of General Counsel was initially denied on July 25, 2024, for various issues regarding the appeal form itself and associated attachments.

Masters was then given 15 days to resubmit the appeal, which he did.  On November 4, 2024, Masters' resubmitted appeal was denied based on the NCRO's finding that his due process rights were upheld during the disciplinary proceeding.

Masters now seeks habeas relief to expunge his charge of Possessing a Dangerous Weapon for a violation of his due process rights and to restore his forty-one days of good time.  In support, Masters reasserts that the A-Range footage would likely show another inmate throwing the weapon in his cell; this time, he specifically asserted this was done by a Hispanic gang member as revenge for being sex offenders with access to the television rooms.  Masters further claimed that when he and Hart were issued the incident report, they both immediately notified Officer Peters and asked to review the A-Range cameras in the Juneau Unit where they were assigned, claiming the video footage would show their innocence.  (Dkt. #20, at 1-3.)  Additionally, Masters claimed that he asked the DHO about what was on the video footage at his hearing as well, but received no reply.  (Dkt. #20-1, at 1.) Masters argues that the DHO and other officers refusals to review the A-Range footage as requested inhibited his ability to present evidence, violating his due process rights.

However, respondent argues that Masters' petition should be dismissed because he failed to exhaust his administrative remedies by raising his due process claim generally or mentioning the alleged refusal to review video evidence specifically in his initial appeal to the NRCO.  (Dkt. # 10, at 7.)  Alternatively, respondent asserts that Masters was not deprived of his due process rights because he signed the form electing not to present evidence or witnesses and failing to request the video during his DHO hearing.  (*Id.*, at 9.)

4

OPINION

To obtain a writ of habeas corpus under 28 U.S.C. § 2241, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States" and has exhausted administrative remedies before seeking habeas relief in federal court under § 2241. *See Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004) ("common law exhaustion rule applies to § 2241 actions"). The latter is required to give an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Thus, the exhaustion requirement is designed to both discourage individuals from ignoring an agency's administrative procedures *and* to promote efficiency, since agencies generally have the ability to resolve disputes quickly and more economically than litigating in federal court. *Id.* Further, the exhaustion requirement is interpreted strictly to require "using all steps that the agency holds out, and doing so properly." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see Williams v. Ortiz*, 937 F.3d 936, 941 (7th Cir. 2019) ("The exhaustion requirement is interpreted strictly; thus, a 'prisoner must comply with the specific procedures and deadlines established by the prison's policy.'") (quoting *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015)). If an inmate has failed to exhaust administrative remedies and the administrative process is no longer available, his habeas claim is barred unless he can demonstrate cause and prejudice to excuse that failure. *Sanchez v. Miller*, 792 F.2d 694, 699 (7th Cir. 1986).

I.      **Failure to Exhaust**

With respect to DHO appeals, the administrative remedy process begins with a submission to the "Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2).   This submission includes a completed BP-10, along with a complete copy or duplicate original of the institution request and response, due within 20 days of the date the response was signed by the warden. 28 C.F.R. § 542.15(a)-(b). The second and final step of the process requires the inmate to submit a BP-11 form, along with a complete copy or duplicate original of the institution and regional filings and their responses, due to the Office of General Counsel within 30 days of the Regional Director's signature.  *Id.*  While following the administrative remedy process for a DHO Appeal, "an inmate may not raise in an Appeal issues not raised in the lower level filings." 28 C.F.R. § 524.15(b)(2*); see Bailey-El v. Fed. Bureau of Prisons*, 246 F. App'x 105, 108 (3d Cir. 2007) (dismissing retaliatory transfer claim because petitioner had failed to raise that issue in his informal complaint in violation of 28 C.F.R. § 524.15(b)(2)).

Here, respondent observes that petitioner did not notify the Regional Director of his due process claim in the initial stage of his DHO appeal, thus failing to exhaust a claim at all stages of the DHO appeal.  (Dkt. # 10, at 7.)  In particular, in his BP-10 form to the NRCO, petitioner made no reference to any video footage or alleged denial by officers and the DHO to review that footage in violation of his due process rights. (Dkt. #11-5, at 3.) Instead, petitioner only mentions that Hart's incident report was expunged and asking, "How can I be found guilty an[d] not Mr. Hart when neither of us took responsibility?" *Id*.  Instead, the due process violation now asserted in petitioner's habeas corpus petition

was not raised until his appeal to the Office of General Counsel, where he claimed for the first time that exculpatory video evidence was withheld by the UDC and the DHO.  (Dkt. #11-6, at 3-4.)

By waiting to raise this claimed due process violation until his appeal to Office of General Counsel, petitioner bypassed both the DHO and NRCO, presenting an issue not part of his lower-level filings in violation of 28 C.F.R. § 524.15(b)(2).  As a result, petitioner failed to comply with the specific procedures in the disciplinary appeal process required to exhaust his administrative remedies properly, *Pozo*, 286 F.3d at 1024, or provide the BOP an adequate opportunity to correct the alleged due process violation on its own, undermining the essential purpose of the exhaustion requirement.  For this reason, his petition for habeas relief must be dismissed *unless* the exhaustion requirement should be excused.

## II.    Excuse for Failure to Exhaust

A court may excuse the exhaustion requirement if: "(1) requiring exhaustion of administrative remedies causes unfair prejudice, due to an unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised."  *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004).  Although a court may excuse the exhaustion requirement, "the hurdle is high." *Richmond*, 387 F.3d at 604.

7

Nevertheless, in his reply brief, petitioner argues that the exhaustion requirement should be waived or excused because "the situation had been predetermined and futile to exhaust because it is highly likely [that] the BOP would not change [its] position as to procedures used by [DHO] Banuelos." (Dkt. #20, at 7.) For the futility exception to apply, however, a party must demonstrate that "it is certain that [his] claim *will be* denied on appeal, not merely that [he] doubts that an appeal will result in a different decision." *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996) (citation omitted) (emphasis added). In this case, petitioner offers no specific facts or evidence demonstrating that his due process claim would have been denied on appeal. Instead, he offers only a conclusory statement that his situation had been predetermined, making any attempt to exhaust futile. Unfortunately for petitioner, "[a]n inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement." *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) (citing *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001)). Because this unsupported allegation is insufficient, Masters fails to show that exhaustion is excused based on futility.

Additionally, petitioner argues that exhaustion should be excused "because the BOP does not have the jurisdiction to settle a constitutional claim." (Dkt. #20, at 8.) In support, petitioner cites to *Gonzalez*, 355 F.3d at 1017, in which the petitioner argued that exhaustion for a due process claim should be waived as futile since the Board of Immigration Appeals (BIA) lacked jurisdiction to rule on constitutional issues. *Id.* In that case, however, the Seventh Circuit ultimately concluded that the exhaustion requirement

was *not* excused because the BIA had the ability to grant the relief requested by the petitioner. *Id*.

Contrary to petitioner's argument, the BOP Program Statement No. 5270.09 that governs the inmate discipline program expressly states that the official reviewing a DHO appeal has the authority to "approve, modify, reverse, or send back with directions, including ordering a rehearing, any action of the UDC or DHO," and thus *could* grant relief based on a prisoner's claim that a violation of due process had occurred during his disciplinary hearing. (Dkt. #12-1 at 37.) Indeed, the Seventh Circuit has routinely applied the exhaustion requirement to habeas cases alleging due process violations in prison disciplinary hearings, as has this court. *E.g., Chambers v. Ciolli*, No. 21-1484, 2021 WL 4950242, at *1 (7th Cir. Oct. 25, 2021); *Fray v. Emmerich*, No. 24-CV-838-JDP, 2026 WL 986318, at *2 (W.D. Wis. Apr. 13, 2026). Accordingly, petitioner also fails to overcome the high bar that is required to excuse the exhaustion requirement based on a lack of an administrative remedy for a constitutional violation. *Richmond*, 387 F.3d at 604.

Likewise, petitioner does not show cause or prejudice for his procedural default. To demonstrate "cause," a habeas petitioner must show that "some objective factor" impeded his efforts to pursue his claim. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Smith v. McKee*, 598 F.3d 374, 383 (7th Cir. 2010). Respondent notes that "had Masters truly requested the video evidence at the hearing, and it was denied, surely he would have mentioned that in his initial DHO Appeal to the Regional office, which he did not." (Dkt. #10, at 10-11.) The court agrees. Since petitioner's allegation that officials denied review of potentially exculpatory video footage is his primary claim, this was an obvious issue to

9

raise on direct appeal.  However, not only did petitioner fail to raise his alleged due process violation in his BP-10 appeal to the Regional Director, he also offers *no* explanation for his failure to do so in that appeal.  For this reason, petitioner does not show cause for his procedural default.

Finally, petitioner fails to satisfy the "prejudice" component, which requires him to show that the challenged proceedings were infected with an error of constitutional dimension.  *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1050 (7th Cir. 2001).  First, petitioner does not dispute that he signed the form electing to forego submitting evidence or witnesses at his hearing before the DHO.  Second, although he claims that the video would have been exculpatory, the video is not in evidence, nor has petitioner claimed to have ever reviewed it.  Rather, he offers only speculation of what it might show.  Even assuming that he asked the DHO or another officer to review that video, therefore, petitioner does not show that it was, in fact, exculpatory and was refused or withheld in violation of due process.  *See United States v. Morris*, 957 F.2d 1391, 1402 (7th Cir. 1992) (requests based on "pure conjecture or speculation" that documents contain exculpatory material are properly rejected).

Because petitioner did not comply with the specific exhaustion requirements in any DHO appeal and has failed to show that his failure to exhaust should be excused, his petition for habeas corpus relief must be dismissed without prejudice for lack of exhaustion.

ORDER

IT IS ORDERED that the habeas corpus petition filed by Timothy Masters (dkt.

#1) is DISMISSED without prejudice.

Entered this 16th day of June, 2026.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge